# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

TWILA MAE WIKSTROM,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C14-4032-MWB

**REPORT AND
RECOMMENDATION**

_____

Plaintiff Twila Mae Wikstrom seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security Disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Wikstrom contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

## I. BACKGROUND

Wikstrom was born in 1956. AR 187. She completed high school and has past relevant work as a cleaner, secretary and teacher aide. AR 31, 327. She protectively filed her application for DIB on October 13, 2010, alleging disability since May 11, 2009. AR 133-39. Her application was denied initially and on reconsideration. AR 66, 74. Wikstrom then requested a hearing before an Administrative Law Judge (ALJ) and ALJ Kathleen Muramoto conducted a hearing on October 25, 2012. AR 11. Wikstrom

testified, as did a vocational expert (VE). AR 28-62. Wikstrom testified that she has been unable to work since 2009 primarily because of emotional problems. AR 39. She stated that she cannot work with other people or take criticism and that she will either fight, threaten others or run and hide. *Id.* She also testified that she has extreme difficulties with concentration. AR 50-52.

On November 6, 2012, the ALJ issued a decision finding that Wikstrom was not disabled at any time from May 11, 2009, through the date of the decision. AR 11-21. The Appeals Council denied Wikstrom's request for review on February 27, 2014. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981.

On April 29, 2014, Wikstrom filed a complaint (Doc. No. 4) in this court seeking review of the Commissioner's decision. This case has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. The parties have briefed the issues and the matter is now fully submitted.

## II.     *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined

in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R.

§§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 404.1545(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the

national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.    THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

(2)    The claimant has not engaged in substantial gainful activity since May 11, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3)    The claimant has the following severe impairments: cervical degenerative disc disease, bipolar disorder, borderline personality disorder, and major depressive disorder (20 CFR 404.1520(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except with the following limitations: occasional overhead reaching bilaterally; can understand, remember, and carry out basic instructions; attention, concentration, and pace are adequate for repetitive tasks; and, can interact appropriately with others on a limited basis, but no direct contact with the public.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7)     The claimant was born on September 27, 1956 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from May 11,2009, through the date of this decision (20 CFR 404.1520(g)).

AR 13-21.

## IV.     *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows

for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789

(8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

# V.    DISCUSSION

Wikstrom contends the ALJ's decision is not supported by substantial evidence because the ALJ (a) failed to evaluate the opinion evidence adequately and (b) failed to evaluate her credibility properly. Doc. No. 12 at 6-15. I will discuss these arguments separately and will then consider the ultimate question of whether the decision is supported by substantial evidence on the record as a whole.

## A.    Opinion Evidence

The ALJ noted that the record contains opinions from the following sources: (1) Albert Okine, PA-C, a physician assistant[1] who treated Wikstrom, (2) Michael Baker, Ph.D., a consultative examiner, (3) Matthew Byrnes, D.O., and John May, M.D., state agency medical consultants who did not examine Wikstrom, and (4) Scott Shafer, Ph.D., and Sandra Davis, Ph.D., state agency psychological consultants who did not examine Wikstrom. AR 18-19. Wikstrom's arguments focus only on the opinions that relate to her mental RFC. These are the opinions provided by Mr. Okine, Dr. Baker and Dr. Shafer.[2]

### 1.    Applicable Standards

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are

---

[1] The ALJ incorrectly referred to Mr. Okine as a medical doctor. AR 19.

[2] Dr. Davis, the other state agency psychological consultant, reviewed and affirmed Dr. Shafer's opinion on reconsideration. AR 482.

defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

*Acceptable Medical Source Opinions.* Medical opinions can come from a treating source, an examining source or a non-treating, non-examining source (typically a state agency medical consultant who issues an opinion based on a review of medical records). Medical opinions from treating physicians are entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). Nonetheless, if the ALJ finds that a treating physician's medical opinion as to the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010). Note, however, that a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

At the other end of the medical-opinion spectrum are opinions from non-treating, non-examining sources: "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). This does not mean, however, that such opinions are to be disregarded. Indeed,

"an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal quotations and citations omitted). Unless a treating source's opinion is given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 404.1527(e)(2)(ii).

In the middle of the spectrum are opinions from consultative examiners who are not treating sources but who examined the claimant for purposes of forming a medical opinion. Normally, the opinion of a one-time consultative examiner will not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000).

Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995)).

***Other Opinion Evidence.*** Opinion evidence may also come from health care providers who do not fall within the Commissioner's definition of an "acceptable medical source," such as nurse practitioners and physician assistants.[3] Social Security Ruling 06-03p nonetheless requires the ALJ to give consideration to such opinions. That ruling includes the following statements:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR

---

[3] That definition identifies various "acceptable medical sources" who can "provide evidence to establish an impairment." *See* 20 C.F.R. § 404.1513(a). Physician assistants are not included.

404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).

\* \* \*

In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

- Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists;

\* \* \*

Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.

\* \* \*

Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

\* \* \*

The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Among other things, this ruling means a physician assistant's opinion is not a "medical opinion," is not entitled to controlling weight and cannot establish *the existence of* a medically-determinable impairment. However, that opinion *can* be used as evidence of the severity of an impairment and how the impairment affects the individual's ability to function. An ALJ must evaluate the opinion with reference to the same factors that apply to other medical sources, including:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
- Any other factors that tend to support or refute the opinion.

*See* 20 C.F.R. § 404.1527(c). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

### 2.    Overview of opinions

#### a.    Mr. Okine

Wikstrom acknowledges that Mr. Okine is not an acceptable medical source.  Doc. No. 12 at 8.  However, she notes that she had an ongoing treatment relationship with him that dated back to 2009.  *Id.*  On April 3, 2011, Mr. Okine prepared a written opinion in which he indicated that Wikstrom had two disabling psychological impairments:  bipolar II disorder and social phobia.  AR 483.  He reported that she had marked limitations in various social functions, including the ability to interact with the public, accept instructions and criticism, get along with co-workers and ask simple questions.  AR 487. He described Wikstrom's symptoms as including an inability to deal with people at her job and being jailed for threatening her husband.  AR 485.  He listed additional symptoms such as arguing, the inability to keep friendships, defying requests from others, doubting her abilities, fears of being alone, feeling persecuted, inappropriate feelings, feelings of guilt and shame, insensitivity to others, jealousy and low self-esteem.  *Id.*  Under the category of "signs," he listed depression, irritability, poor self-esteem, anhedonia, apathetic, guilt, isolation, anger, impulsivity, easily frustrated, physical and verbal aggression and a history of self-medicating with cannabis and alcohol.  *Id.*  On October 22, 2012, in response to an inquiry from Wikstrom's counsel, Mr. Okine stated that his opinion had not changed.  AR 502.

#### b.    Dr. Baker

Dr. Baker, a licensed psychologist, saw Wikstrom on December 21, 2010, and submitted a written report.  AR 447-49.  He diagnosed bipolar disorder II and social phobia and assigned a Global Assessment of Functioning (GAF) score of 45, indicating serious symptoms.[4]    AR 449.    Dr. Baker reported that during testing, Wikstrom

---

[4] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations.  *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of*

conducted serial sevens at a slow rate, with three errors out of seven responses. AR 448. He noted that she was only able to recall one of four items after three minutes and that her responses to judgment items were minimally acceptable. AR 448-49. In addition, Wikstrom misspelled the word "world" backwards and did not calculate arithmetic problems correctly. AR 449.

Dr. Baker found that Wikstrom's recall, memory and concentration were poor while her judgment and insight were minimal. AR 448-49. He reported that she had poor eye contact and was tearful throughout the session, while her mood was dark and angry. AR 448. Dr. Baker concluded that that Wikstrom would have extreme difficulty remembering instructions, procedures, and locations for employment. AR 449. He also found that her emotionality would be likely to affect maintaining attention, concentration and pace for carrying out instructions. *Id.* Finally, he predicted that she would have "problems with interacting appropriately as well as using good judgment in responding to change in the workplace." *Id.*

### c.    *Dr. Shafer*

Dr. Shafer, a psychologist, reviewed Wikstrom's file as a state agency psychology consultant but did not examine her. He issued a psychiatric review technique and metal RFC assessment dated January 10, 2011. AR 457-74. He found that Wikstrom had moderate limitations in maintaining social function and in maintaining concentration, persistence or pace. AR 467. He further found that she was markedly limited in interacting with the public and moderately limited in several areas of function, including the ability to: maintain attention and concentration, work with others without distraction, accept instruction and criticism in the workplace, get along with co-workers, respond to

---

*Mental Disorders* 34 (4th ed.) (DSM–IV). A GAF score of 41–50 reflects "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). *Id.*

changes, complete a normal workweek without interruption from psychiatric symptoms, and perform at a consistent pace. AR 472-73. While Dr. Shafer found that Wikstrom could understand, remember, and follow basic instruction, he reported that her attention, concentration and pace would be adequate only for routine tasks not requiring sustained attention and that she would need added supervision to adjust to changes in a workplace. *Id.*

### 3. The ALJ's Explanation

The ALJ started the RFC analysis with a summary of the medical evidence. AR 16-18. She then addressed the opinion evidence, affording great weight to Dr. Shafer's opinion, some weight to Dr. Baker's opinion and little weight to Mr. Okine's opinion. AR 18-19. With regard to Dr. Shafer, the ALJ concluded that his opinion was "consistent with the findings made above" (meaning the ALJ's analysis of the medical evidence) and "supported by the medical evidence as a whole." AR 18. She further stated that during recent examinations, Wikstrom was "pleasant and cooperative," maintaining good eye contact and rapport. *Id.* (citing AR 477).

As for Dr. Baker, the ALJ expressed concern that his opinion did not "adequately describe the level of limitation experienced by the claimant due to her impairments, and only vaguely describes difficulties in certain areas." AR 19. As such, she gave the opinion only some weight, to the extent that it was "consistent with the findings above limiting [Wikstrom] to unskilled work with only limited contact with coworkers and supervisors." *Id.*

Finally, with regard to Mr. Okine's opinion, the ALJ found it to be inconsistent with the record as a whole, "which shows that [Wikstrom] was pleasant and cooperative" and that she "maintained good eye contact, and rapport was able to be established." *Id.* (citing AR 477).

### 4.   Analysis

#### a.   Mr. Okine's Opinion

The ALJ's direct explanation for discounting this opinion is rather superficial, consisting of a short paragraph that cites one page of the record while declaring the opinion to be "inconsistent with the record as a whole." AR 19. As noted above, however, the ALJ started her analysis of Wikstrom's RFC with a summary of the medical evidence. That summary, which includes discussion of Mr. Okine's treatment notes, provides additional insight. The ALJ also indicated that she evaluated all opinion evidence in accordance with the requirements of the applicable regulations and rulings, including SSR 06-03p. AR 15. Thus, I will not assume that the ALJ failed to consider the appropriate factors.

In summarizing the medical evidence, the ALJ referenced treatment notes from not only Mr. Okine, but also from Daniel J. Dees, M.D., a treating psychiatrist, and Michele Boykin, LISW, a treating therapist. AR 17-18 (citing AR 346-55, 365, 475-78, 493). Based on my careful review of those notes, I cannot conclude that the ALJ's assessment of Mr. Okine's opinion is erroneous. Indeed, while Mr. Okine's initial assessment of Wikstrom in October 2009 reflected some concerns, AR 352-54, the ALJ correctly observed that his notes of subsequent examinations evidenced improvement and only mild symptoms. AR 355-57, 477, 493. On April 12, 2011, just nine days after preparing his opinion, Mr. Okine found Wikstrom to be "alert and oriented . . . pleasant and cooperative." AR 493. She maintained good eye contact and "rapport was established." *Id.* He described her mood and affect as "euthymic" and stated that she denied any "current psychotic symptoms." *Id.* Mr. Okine reported that according to Wikstrom, "[h]er recent anxiety has mostly been about her disability case." *Id.* It was not impermissible for the ALJ to find that Mr. Okine's opinion as to Wikstrom's limitations was inconsistent with his own treatment notes.

Other evidence of record also supports the ALJ's decision to afford little weight to Mr. Okine's opinion. For example, Wikstrom's daily activities did not reflect marked

limitations in social functioning. Wikstrom shopped regularly, suggesting that she was able to deal with others in a public setting. AR 41, 224, 356. Likewise, she spent time with friends, communicated with a good friend on a daily basis and sometimes socialized with others. AR 42-43, 224, 355. The ALJ was entitled to conclude that these activities were inconsistent with Mr. Okine's opinion.

Because Mr. Okine is not an acceptable medical source, the ALJ had more discretion to consider any inconsistencies in the record while evaluating his opinion. *Raney*, 396 F.3d at 1010. I find that the ALJ's decision to afford little weight to that opinion is supported by substantial evidence on the record as a whole.

### b.    Dr. Baker's and Dr. Shafer's Opinions

Dr. Baker was a consultative examiner who saw Wikstrom once, while Dr. Shafer was a state agency consultant who reviewed records but did not examine Wikstrom. The ALJ afforded only "some" weight to Dr. Baker's opinion, primarily because it did not "adequately describe the level of limitation experienced by the claimant due to her impairments, and only vaguely describes difficulties in certain areas." AR 19. Thus, having discounted Mr. Okine's opinion and having found Dr. Baker's opinion to be vague and inadequate, the ALJ was left with only Dr. Shafer's opinion as to Wikstrom's mental RFC. The ALJ afforded great weight to that opinion, finding that it was consistent with the record as a whole.

With regard to Dr. Baker, I agree with the ALJ that his opinion fell short of offering specific guidance as to the extent of Wikstrom's limitations. Dr. Baker stated that Wikstrom would have "extreme difficulty remembering more so than understanding instructions, procedures, and locations for employment." AR 449. He also found that she would have "problems with interacting appropriately as well as using good judgment in responding to change in the workplace." *Id.* However, he did not state that she was capable, or incapable, of performing specific workplace tasks as a result of these issues. Opinions simply stating that a claimant will have difficulties in certain areas, without

17

further elaboration, are of limited value due to their vagueness. *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996).

Moreover, the ALJ did not reject Dr. Baker's opinion entirely, instead affording it some weight. AR 19. In describing Wikstrom's mental RFC, the ALJ found that she can "understand, remember, and carry out" only "basic instructions" and that her "attention, concentration, and pace" are adequate only for "repetitive tasks." AR 15. She also concluded that Wikstrom should have "no direct contact with the public" and should interact with others only "on a limited basis." *Id.* Thus, the ALJ clearly took the areas of difficulty that were vaguely described by Dr. Baker into consideration in formulating Wikstrom's mental RFC.

Finally, and for the reasons discussed above with regard to Mr. Okine's opinion, I find that the ALJ properly compared Dr. Baker's opinion to the record as a whole and accepted the opinion only to the extent that it was consistent with other evidence. AR 19. It was not error for the ALJ to find that Wikstrom's contemporaneous mental health treatment notes, and her daily activities, suggested a less-than-disabling level of impairment. To the extent that Dr. Baker's somewhat-vague opinion could be read to impose restrictions beyond those set forth in the RFC, the ALJ was entitled to reject that opinion as being inconsistent with the record as a whole.

This leaves only the question of whether the ALJ erred in affording great weight to the opinion of Dr. Shafer, a non-examining medical source. The ALJ found that Dr. Shafer's opinion was supported by the record as a whole and noted that it had been confirmed on review by another psychological consultant, Dr. Davis. AR 18. While opinions of non-examining sources do not constitute substantial evidence, *Shontos*, 328 F.3d at 427, an ALJ does not commit reversible error when he or she undertakes an independent review of the medical evidence and does not rely solely on the opinion of a non-examining source in determining a claimant's RFC. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). By definition, state agency consultants are "highly qualified physicians,

psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i).

Here, the ALJ did not rely solely on Dr. Shafer's opinion. Rather, she undertook an independent review of the medical evidence, gave some weight to the opinion of the consultative examiner, Dr. Baker, and found that Dr. Shafer's opinion was consistent with the record as a whole. AR 18. I find that the ALJ followed the appropriate framework for reviewing and weighing medical opinions and provided good reasons, supported by substantial evidence, for the weight given to Dr. Baker's and Dr. Shafer's opinions. As such, and in light of the standard of review that I must follow, I reject Wikstrom's argument that the ALJ failed to evaluate the opinion evidence properly.[5]

## B.    Credibility

Wikstrom makes an abbreviated argument that the ALJ failed to apply the *Polaski* factors in evaluating the credibility of her subjective complaints. Doc. No. 12 at 14-15. Under *Polaski,* to determine a claimant's credibility the ALJ must consider:

(1)    the claimant's daily activities;

(2)    the duration, intensity, and frequency of pain;

(3)    the precipitating and aggravating factors;

(4)    the dosage, effectiveness, and side effects of medication; and

(5)    any functional restrictions.

---

[5] I also reject Wikstrom's argument that Dr. Shafer's opinion imposes restrictions greater than those the ALJ incorporated into the RFC. That argument is based on semantics. Dr. Shafer found that Wikstrom's attention, concentration and pace were "adequate for routine tasks not requiring sustained attention." AR 473-74. The RFC states that Wikstrom's "attention, concentration, and pace are adequate for repetitive tasks." AR 15. Citing no authority, Wikstrom declares: "Dr. Shafer's opinion is certainly more limiting than the ALJ's RFC." Doc. No. 12 at 14. As the Commissioner points out, the words "routine" and "repetitive" are used interchangeably in describing unskilled work. Doc. No. 13 at 29-30 (citing authorities).

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* 20 C.F.R. § 404.1529(c)(3). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ is not required to discuss each factor so long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791.

Wikstrom contends that the ALJ "provided no discussion to discount" her testimony. Doc. No. 12 at 14. This is incorrect. The ALJ specifically referenced 20 C.F.R. § 404.1529, which lists the same factors identified in *Polaski*. AR 15; *see also* 20 C.F.R. § 404.1529(c)(3). The ALJ acknowledged that she was required to "make a finding on the credibility of [Wikstrom's] statements based on a consideration of the entire case record." AR 16. She then addressed the case record and provided reasons for her conclusion that Wikstrom's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id*. Those reasons include: (a) Wikstrom's description of her daily activities is not consistent with her claimed limitations and (b) the objective medical evidence does not "provide strong support for [Wikstrom's] allegations of disability symptoms and limitations." *Id*.

With regard to daily activities, the ALJ stated that Wikstrom cares for her husband and two dogs, completes household chores, shops, pays bills, handles a savings account, communicates with others and spends time with others. *Id*. These findings are supported by the record. AR 41-43, 224, 355-56. The ALJ was entitled to find that Wikstrom's ability to engage in these activities is inconsistent with her allegation of disabling impairments. *See, e.g., Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009).

As for the medical evidence, an ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010). However, the lack of such

evidence is a factor the ALJ may consider. *Mouser*, 545 F.3d at 638. Here, I cannot conclude that the ALJ erred in finding that the medical evidence does not support Wikstrom's subjective allegations.

A claimant's credibility is "primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Thus, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Having carefully reviewed the record, I find that the ALJ provided good reasons, supported by substantial evidence, for discrediting Wikstrom's subjective allegations. As such, I reject Wikstrom's argument that the ALJ failed to evaluate her credibility properly.

## C.     Is the Decision Supported by Substantial Evidence?

In light of my findings that the ALJ properly weighed the medical opinion evidence and evaluated Wikstrom's credibility, I conclude that the ALJ's formulation of Wikstrom's RFC is supported by substantial evidence on the record as a whole. Based on that RFC, the ALJ determined that Wikstrom is unable to perform any past relevant work. AR 19. The ALJ then moved to Step Five and, in reliance on the VE's testimony, found that Wikstrom is able to perform various unskilled jobs that exist in significant numbers in the national economy. AR 20-21. In procuring the VE's testimony, the ALJ presented hypothetical questions that mirrored the limitations described in the RFC. AR 56-59.

"A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). It need only include "those impairments and limitations found credible by the ALJ." *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). Here, the VE's testimony was based on questions that properly accounted for Wikstrom's impairments, as reflected in the RFC. Thus, that testimony

constitutes substantial evidence supporting the ALJ's finding at Step Five that Wikstrom is not disabled.

## VI.    CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Wikstrom was not disabled be **affirmed** and that judgment be entered against Wikstrom and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72.  Failure to object waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 23rd day of February, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE